UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

DAVID HANNINGTON,              )
                               )
      Plaintiff,              )
                               )
v.                             )    1:10-cv-00431-GZS
                               )
SUN LIFE AND HEALTH            )
INSURANCE COMPANY,             )
                               )
      Defendant               )

**RECOMMENDED DECISION**

David Hannington brought this action against Sun Life and Health Insurance Company pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), alleging that Sun Life's computation of his monthly benefit under James W. Sewall Company's Long Term Disability Plan[1] depends upon an arbitrary and capricious reading of the Plan and must be overturned by this Court. The parties presently have before the Court cross-motions for judgment on the merits. The Court referred these motions for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). The parties presented oral argument on October 6, 2011. For reasons that follow, I recommend that the Court grant Hannington's motion for judgment and deny Sun Life's motion for judgment.

STATEMENT OF THE CASE

It is undisputed that Hannington is a qualifying beneficiary under the Long Term Disability (LTD) Plan in question and that the Plan is an employee benefit plan subject to ERISA. The dispute arises based on Sun Life's calculation of Hannington's monthly benefit.

---

[1] According to the documentation, the James W. Sewall Company is a participant in a group policy held by the Trustee of the Engineering & Architectural Service & Supply Industry Group Insurance Fund (Rhode Island) under a trust agreement dated September 1, 1977. (Admin. R. 90.) The certificate for this Plan identifies a Group Insurance Policy issued by GE Group Life Assurance Company. (Id.)

Specifically, Sun Life has asserted a right to offset Hannington's service-connected disability benefits, which Hannington receives because his disability is connected with his military service. The relevant plan language and the undisputed background facts are as follows.

### A. The Plan

The Group Policy Certificate is found in the administrative record at pages 90 through 118. The Certificate identifies GE Group Life Assurance Company as the issuer of the group insurance policy and makes no mention of Sun Life, although the application (claim) form in the Record is a Sun Life form. (Id. at 88.) The Certificate ends at page 118 of the record and a two-page ERISA notice form follows at pages 119 to 120. The notice form identifies GE Group Life Assurance Company as the claims fiduciary and represents that GE Group Life Assurance Company possesses "discretionary authority to make claim, eligibility and other administrative determinations regarding [the policy], and to interpret the meaning of [policy] terms and language." (Id. at 120.) The notice form further indicates:

> The Claims Fiduciary shall have the sole and exclusive discretion and power to grant and/or deny any and all claims for benefits, and construe any and all issues relating to eligibility for benefits. All findings, decisions, and/or determinations of any type made by the Claims Fiduciary shall not be disturbed unless the Claims Fiduciary has acted in an arbitrary and/or capricious manner.

(Id.) In its motion for judgment, Sun Life quotes the foregoing language and asserts that it has sole and exclusive discretion to determine Hannington's claim. At oral argument, Sun Life explained that it is a successor to GE Group Life Assurance Company, rather than a mere third-party claims administrator. Hannington has not challenged the basic premise that Sun Life is the "claims fiduciary" cloaked with the discretionary authority contained in the ERISA notice form.

The basic measure of monthly LTD benefits under the Plan is 60 percent of the employee's pre-disability salary. However, pursuant to the Group Policy Certificate, a

beneficiary's monthly benefit is to be reduced by "Other Income benefits, as defined in the OTHER INCOME part of the Certificate." (Admin. R. at 102.) The Other Income part lists seven categories of "benefits or amounts" received by an insured from other sources. Those seven categories are, essentially: (1) workers' compensation and occupational disease laws; (2) disability benefits under compulsory benefits acts; (3) disability or loss of income benefits under other insurance plans and policies, including retirement plans and government retirement programs; (4) employer-funded retirement plan benefits; (5) the category in dispute here (set out in full below); (6) income from a salary continuance plan; and (7) benefits under unemployment compensation laws. This case turns on the reach of the language set forth in category five, which defines as other income:

> 5. Any amount of disability or retirement benefits under:
>
>    a) the United States Social Security Act . . .;
>    b) the Railroad Retirement Act; [or]
>    c) any other similar act or law provided in any jurisdiction.

(Id. at 103.)

### B. Undisputed Background Facts

In a Rating Decision of November 26, 2008, the Department of Veterans Affairs concluded that Hannington suffers from a blood disease he contracted from vaccinations received in anticipation of deployment to Iraq. (Id. at 563.) The VA found that this disability is "service connected" and granted Hannington's claim for VA service-connected benefits "with an evaluation of 100 percent [disability] effective May 13, 2008." (Id. at 561.)

Hannington left work on June 19, 2008, based on the same disabling condition. Hannington applied for LTD benefits under the Plan on October 13, 2008. In his application,

Hannington identified his disabling condition as the same disease for which he would later obtain his VA service-connected benefit. (Id. at 88-89.)

Sun Life notified Hannington on February 20, 2009, that it was approving his claim for LTD benefits. (Id. at 659.) The notification informed Hannington that he should apply for social security benefits if his disability was expected to persist for longer than one year and requested further information regarding Hannington's VA benefits. (Id. at 660.) Following its review of the VA Rating Decision, Sun Life concluded that Hannington's VA benefit was "other income" that must be offset against Hannington's LTD benefits effective September 17, 2008,[2] and demanded reimbursement for overpayment in the preceding seven months, calculated as $16,701.97.[3] (Id. at 528.) Sun Life thereafter denied Hannington's administrative appeal. (Id. at 479.)

In connection with its submission of the administrative record, Sun Life filed the Affidavit of Kathleen A. Peters, Associate Director of Sun Life's Group LTD Appeal Unit. Ms. Peters avers, among other things, that Sun Life has a practice of evaluating "each claim fairly on its individual merits;" that it uses a "quality control process to ensure accurate decision-making"; that its employees do not have a financial incentive to deny claims; that employees are eligible to receive annual bonuses "based on the overall performance of Sun Life"; that senior consultants in the Appeal Unit make "independent *de novo* assessments" of claims denials; and that the persons making these decisions work in departments that are separate from "financial, actuarial and underwriting departments." (Doc. No. 10.)

---

[2] September 17, 2008, is the commencement date for the LTD benefit. (Admin. R. at 663.)
[3] The calculation asserts that Sun Life has a carry-forward credit of $799.82 in September 2008 and of $277.14 in October 2008, but it is not explained why Sun Life is carrying forward as "overpayment" amounts that Sun Life never paid to Hannington. (See Admin. R. at 531-32.)

4

### C. Hannington's Plea for Relief

Hannington's complaint requests the following relief: "Plaintiff seeks recovery of the sum deducted from the benefits to which he is entitled under the Plan; a declaration that Sun Life cannot deduct the VA benefits from the Plan benefits to which he is entitled plus costs and attorney's fees." (Compl. at 2.) Additionally: "Plaintiff requests judgment against Defendant for damages in an amount determined to be reasonable; equitable relief in the form of a Court Order that Plaintiff is entitled to the full amount of past and future benefits without deduction for VA, service-connected, disability benefits and all other remedies allowed and appropriate under ERISA plus interest, costs, attorney fees, and such further relief as the Court deems just and proper." (Id. at 5.)

### STANDARD OF REVIEW

Under prevailing law, the Court's review of Sun Life's benefits determination is said to be *de novo*. Recupero v. New Eng. Tel. & Tel. Co., 118 F.3d 820, 826-27 (1st Cir. 1997). However, because the Plan grants discretionary authority to the claims fiduciary, Sun Life, this *de novo* review is subject to a deferential, "arbitrary and capricious" standard and the Court is prevented from exercising plenary power to make the benefits determination anew. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989); Matias-Correa v. Pfizer, 345 F.3d 7, 11 (1st Cir. 2003); Dandurand v. Unum Life Ins. Co. of Am., 284 F.3d 331, 335 (1st Cir. 2002); Recupero, 118 F.3d at 828. Thus, Sun Life's interpretation must be upheld unless Sun Life's interpretation is arbitrary and capricious.

The parties have not identified any disputed factual issues and, consequently, the sole issue is whether Sun Life has interpreted the language of its Plan in an arbitrary and capricious manner. In the context of ERISA fiduciary duties, an insurer's construction of its own policy

language will be found arbitrary and capricious if the construction is unreasonable. Matias-Correa, 345 F.3d at 12. The rule of *contra proferentum*, which ordinarily requires that ambiguous language in an insurance policy be construed against the interest of its author, is inapplicable in the ERISA context when the plan affords the decision-maker discretionary authority to construe plan language. D&H Therapy Assocs., LLC v. Boston Mut. Life Ins. Co., 640 F.3d 27, 35 (1st Cir. 2011); Recupero, 118 F.3d at 825. Nevertheless, the fact that the fiduciary is construing policy language in favor of its own financial interest is not an irrelevant factor. To the contrary, the presence of a conflict of interest is a factor that the Court must necessarily take into consideration. This factor generally proves less important "where the administrator has taken active steps to reduce potential bias and to promote accuracy." Cusson v. Liberty Life Assur. Co., 592 F.3d 215, 224 (1st Cir. 2010) (quoting Metro. Life Ins. Co. v. Glenn, 128 S. Ct. 2343, 2351 (2008)). In effect, the Court refrains from exercising *de novo* review or imposing special burden-of-proof rules or any special procedural or evidentiary rules, but considers as one factor that the administrator is laboring under a structural conflict of interest. Glenn, 128 S. Ct. at 2351.

## DISCUSSION

Sun Life determined that Hannington's service-connected VA benefits qualify as "other income" that should be offset against his LTD benefits under the Plan. Sun Life maintains that the VA benefits are "other income" under the language of the Certificate because federal law providing for VA benefits, 38 U.S.C. §§ 1110 *et seq.*, is "similar" to the United States Social Security Act, which also provides disability benefits to qualified applicants. (Def.'s Mot. for J. at 6-7, Doc. No. 17.)

For ease of reference, the relevant Certificate definition of other income is repeated here:

6

>   5. Any amount of disability or retirement benefits under:
>
>      a) the United States Social Security Act . . .;
>      b) the Railroad Retirement Act; [or]
>      c) *any other similar act or law provided in any jurisdiction.*

(Admin. R. at 103 (emphasis added).)

Hannington argues that Sun Life's interpretation of this provision is arbitrary because VA benefits are dissimilar to social security disability benefits. Hannington maintains that his monthly VA benefits are not "income" because they are paid in compensation for a service-connected disability and are therefore not designed to replace prior income. (Pl.'s Mot. for J. at 4, Doc. No. 18.) Hannington also argues that VA service-connected benefits are different because they are tax-free[4] and are unrelated to a veteran's ability to engage in full-time employment. (Id. at 4-5, citing Admin. R. at 488.)[5]

Hannington's preliminary argument that his service-connected benefits are not "income" is not persuasive. Service-connected benefits are clearly "income." Nevertheless, that limited point does not undermine Hannington's cause. The issue for decision is whether these benefits can reasonably be regarded as "other income" under the fifth definition in the Certificate; that is, whether they are provided pursuant to an act or law that is similar to the Social Security Act or the Railroad Retirement Act. On that question, Hannington has persuaded me that federal service-connected disability compensation law is very much unlike the Social Security Act or the Railroad Retirement Act, such that it is unreasonable to lump it together with the latter acts based on vague language referencing "similar" acts or laws.

---

[4] See 26 U.S.C. § 104(a)(4).
[5] Sun Life objects to Hannington's citation of a response he received to an inquiry posted to the Department of Veterans Affairs, asserting that Hannington's attempt to treat this document as equivalent to a formal statement of VA policy is not appropriate. This is a fair objection, but Hannington's argument is not lost or diminished on the basis of an evidentiary ruling.

Service-connected benefits are made available pursuant to "wartime disability compensation" law, 38 U.S.C. §§ 1110-1118, or "peacetime" disability compensation law, id. §§ 1131-1137.[6] Both laws provide veterans with disability benefits for service-connected disability resulting from personal injury or disease acquired in the line of duty during active military service, including aggravation of preexisting conditions during active military service. Eligibility for disability compensation requires both active military service and a disabling condition having a service-connection. See, e.g., 38 C.F.R. § 3.4 (defining compensation as a monthly payment from the Department of Veterans Affairs to a veteran "because of service-connected disability"). Service-connected disability compensation does not require that the veteran be unable to pursue gainful employment in order to receive compensation, quite unlike pre-retirement disability under the Social Security Act. Also, service-connected disability compensation is available for partial disability, 38 U.S.C. § 1114, which is very much unlike the disability benefits provided under either Title II or Title XVI of the Social Security Act or under the Railroad Retirement Act. The mere fact that a veteran might suffer a "total" service-connected disability that would also qualify him or her for social security disability benefits does not supply sufficient cause to view the very different acts or laws as "similar" under the Certificate's offset provision.[7]

---

[6] Hannington contracted his disease from an immunization administered in 2002 in anticipation of deployment to Iraq. Because this particular deployment was not for the first conflict with Iraq (the Persian Gulf War), it is unclear whether his application is for "wartime" or "peacetime" disability compensation. See 38 C.F.R. § 3.2. Most likely his compensation falls under the peacetime provisions because Congress only "authorized" the use of military force in connection with the more recent engagement, without ever declaring war.

[7] Hannington additionally argues that the offset language cannot be extended to VA benefits because it includes a jurisdictional qualifier: "any other similar act or law provided *in any jurisdiction*." Hannington suggests that this qualifier is meant to refer only to state jurisdictions or other non-federal jurisdictions because federal statutes apply in every state. (Pl.'s Mot. for J. at 4.) A reasonable reading of this qualifying language is that the similar act or law could be one passed in any jurisdiction, state, federal, or foreign. This language reasonably extends to federal laws.

Sun Life argues that "VA disability benefits" under the "VA Benefits Act" are similar to disability benefits under the Social Security Act because they are awarded pursuant to federal law and are made available based on disability.[8] In addition, Sun Life lists the following similarities: that both benefits take the form of periodic payments; that both benefits are paid without regard to fault[9]; that death benefits are available under both federal statutes; that the statutes include anti-assignment clauses; that claims under both statutes are administered by independent agencies; and that a single application is used to apply for both social security and VA benefits, citing 38 U.S.C. § 5105. (Def.'s Brief in Opposition to Pl.'s Mot. for J. at 6, Doc. No. 21.) Sun Life adds that the Department of Veterans Affairs recognizes that its rating schedule for service-connected disability is based on a general measure of earning capacity impairment so that, like social security benefits, veterans' benefits are designed to ensure a minimum level of income. (Id. at 6-7, citing 38 C.F.R. §§ 4.1, 4.15, 4.16.) (Def.'s Mot. for J. at 6-7.) These commonalities, however, do not justify a finding that service-connected compensation and social security benefits arise under "similar" acts.

Of the features listed by Sun Life, the closest to the mark is the fact that "disability" is a qualifying factor for both service-connected disability compensation and social security disability benefits. However, the concept of "disability" can be conceived of in different ways and can be measured by many different standards. For instance, the disability concept under the service-connected disability compensation law allows for findings (or "ratings") of partial disability, as low as ten percent. By comparison, the Social Security Act treats disability as an inability to pursue any substantial gainful activity. In effect, the Social Security Act's lowest

---

[8] Sun Life focuses on the Social Security Act without developing an argument concerning the particular characteristics of the Railroad Retirement Act.

[9] This does not appear to be accurate. Service-connected benefits are not available for disability that results from the veteran's willful misconduct or from the abuse of alcohol or drugs. 38 C.F.R. § 3.1(m).

9

qualifying measure of disability is significantly more demanding than, for example, a ten percent disability rating for service-connected disability compensation. Additionally, the only disabilities that qualify for compensation under the service-connected disability compensation laws are those acquired in active military service. Service-connected disability compensation is designed to compensate for a special sacrifice and is not conditioned on total disability. That is not true of social security disability benefits.[10]

The other features that Sun Life lists are superficial, at best. The fact that both schemes are federal is not a reasonable basis to conclude that they are similar acts or law. Nor is the fact that provision is made under both schemes for survivor benefits, for anti-assignment, for third-party administrative processing, or for a streamlined application process. These few common threads are woven into larger and distinctly different fabrics. It is the differences that stand out upon comparison, not the similarities. A fiduciary free of a structural conflict of interest would not attempt to emphasize the limited similarities given the more substantial and meaningful differences that are readily apparent, particularly as the Plan Certificate makes no mention of VA benefits at all.

This approach to policy construction is unreasonable, even where, as here, the disabling condition at issue qualifies the veteran for both social security disability benefits and service-connected disability compensation. I emphasize this point only because Hannington's particular scenario is suggestive of a facile similarity insofar as his service-connected disability also qualifies him for disability benefits under Title II of the Social Security Act. Despite this aspect of his particular case, it is easy to imagine a scenario involving a veteran who receives service-connected disability compensation for a preexisting condition different from a later, non-service-

---

[10] Another noteworthy attribute of service-connected disability compensation (actually all veterans' benefits) is that they may be received by a veteran who also receives disability insurance benefits under the Social Security Act, without any reduction in his social security benefit. 42 U.S.C. § 424a(a)(2)(B)(i).

10

connected condition that qualifies him for social security disability benefits but not service-connected disability compensation. Nothing in the Certificate language reasonably suggests that a veteran would be subject to an offset against his LTD insurance because he continued to receive monthly compensation for a preexisting and unrelated, service-connected disability. If anything, the possibility of such a scenario reinforces just how dissimilar service-connected disability compensation law is to the Social Security Act. It is not reasonable for a veteran to lose a monthly benefit for a partial, service-connected disability simply because he or she later suffers a total non-service-connected disability. Hannington should not be in any worse position just because his service-connected disability happens to be severe enough to allow for disability benefits under the Social Security Act. In either scenario, the fact remains that service-connected disability compensation law is not sufficiently similar to the Social Security Act such that it would reasonably be suggested based on a vague reference to any other act or law "similar to" the Social Security Act.

This conclusion is reinforced, in my view, by the structural conflict of interest that exists in this case. But for this factor, it is difficult to understand why Sun Life would apply an offset for service-connected disability compensation when the Certificate nowhere references service-connected disabilities, much less veterans. A reasonable fiduciary would be troubled by the Certificate's omission of any reference to veterans' benefits or service-connected disability compensation. Any veteran considering whether to participate in a long-term disability plan would want to be apprised of the fact that the policy called for veterans' benefits to be offset against insurance proceeds. This is particularly so in the case of veterans' benefits associated with a service-connected disability, which benefits might already be in place when the veteran is considering whether to purchase LTD insurance. A veteran considering whether to purchase

11

such insurance, as a person presently engaged in the work force, would certainly object to the idea that his or her service-connected disability compensation arises from an act or law "similar to" the Social Security Act, which is limited to individuals unable to engage in substantial gainful employment. Sun Life's structural bias is a factor that helps to explain its administrative interpretation of the offset provision.

Were it not for the ERISA overlay, it would be most in keeping with insurance law to construe any ambiguity arising from the "other income" offset provision against the insurer, as the Supreme Court of Texas did in <u>Barnett v. Aetna Life Ins. Co.</u>, 723 S.W.2d 663, 665-666 (Tex. 1987). Given the ERISA overlay, however, the rule of *contra proferentum* does not apply and I have not based my recommendation on that rule. Even in the context of the arbitrary and capricious standard of review, however, Sun Life's determination is an unreasonable one.

This case is similar to <u>Riley v. Sun Life & Health Ins. Co.</u>, in which the District of Nebraska addressed the identical plan language. That court found that it was reasonable for a plan administrator to conclude that "retirement or disability benefits received through veterans' benefits statutes . . . are 'similar to' retirement or disability benefits received through the Social Security Act . . . and the Railroad Retirement Act," noting, however, that it might rule otherwise "[i]f the plaintiff's VA benefits were based on . . . a service-related disability that was different from the disability that led to his receipt of benefits under the ERISA plan." Case No. 8:09CV303, 2010 U.S. Dist. Lexis 61881, *12-14 & n.3, 2010 WL 2545768 (D. Neb. June 18, 2010). In effect, the court's assessment of the reasonableness issue turned on the fact that the disability that qualified the claimant for LTD benefits was the same as the disability that qualified him for veterans' benefits. While that argument has a facile appeal on the facts of this case, that is not the issue presented by this policy language. The question is whether the acts or

laws are themselves similar and logically coherent for purposes of associating them under the Certificate's fifth definition of other income.

On the day immediately following oral argument in this matter, a panel of the Eighth Circuit reversed the District of Nebraska's decision in Riley. In a majority opinion, the panel observed that the plan language did not contain any provision that would have put the claimant on notice that VA benefits would be offset. According to the Court: VA benefits "for a wartime service-related disability, as a matter of statutory construction, do not derive from an act that is 'similar to' the SSA or RRA." Riley v. Sun Life and Health Ins. Co., ___ F.3d ___, 2011 U.S. App. Lexis 20393, *8, 2011 WL 4634218, *3 (8th Cir. Oct. 7, 2011) (2-1). The Court pointed out that the SSA and the RRA provide disability benefits derived from a tax on the employer and the employee and provide a form of insurance measured by what has been paid in, whereas VA benefits are in the nature of "compensation for injuries to service men and women during military duty" and are funded in the VA's budget rather than by means of a tax on service members. Id., 2011 U.S. App. Lexis 20393, *9-10, 2011 WL 4634218, *3. The Court also noted that the "road" to benefits is an easier one for veterans under the Veterans Benefits Act than it would be under the SSA or RRA. Id., 2011 U.S. App. Lexis 20393, *10, 2011 WL 4634218, *3. In addition to these significant differences, the Court highlighted case law emphasizing the special solicitude Congress has expressed and demonstrated for veterans, including Henderson v. Shinseki, 131 S. Ct. 1197, 1199 (2011), and United States v. Oregon, 366 U.S. 643, 647 (1961). In summary, the Court explained: "The differing burdens, funding, and most especially, policy purposes of the VBA versus the SSA and/or the RRA indicate that as a matter of statutory construction, the VBA is in no relevant way similar to the SSA or the

13

RRA." 2011 U.S. App. Lexis 20393, *11-12, 2011 WL 4634218, *4. These reasons are persuasive, in my view, and demonstrate the merit of Hannington's suit.[11]

The other precedents cited and discussed in the parties' memoranda concern readily distinguishable plan language and offer no assistance in the resolution of this matter. See, e.g., Jones v. ReliaStar Life Ins. Co., 615 F.3d 941 (8th Cir 2010) (affirming claims decision that VA benefits fell within "other income" defined to include benefits derived from other sources because of "the same or related disability").

**Conclusion**

For the reasons set forth above, I recommend that the Court find that the law or act providing Hannington with service-connected disability compensation is not reasonably similar to either the Social Security Act or the Railroad Retirement Act for purposes of the "other income" offset described in Sun Life's Group Policy Certificate. Should the Court agree with this recommendation, Plaintiff's Motion for Judgment (Doc. No. 18) should be GRANTED and Defendant's Motion for Judgment (Doc. No. 17) DENIED. The Court's Judgment should direct that Sun Life pay past and future benefits without any offset based on Hannington's receipt of service-connected disability benefits.

---

[11] The panel decision focuses on service-connected disability benefits even though it references the "Veterans' Benefits Act" broadly. The dissenting justice emphasizes that the Veterans' Benefits Act, broadly, includes non-service-connected disability benefits that are like social security benefits because they are "essentially based on employment." 2011 U.S. App. Lexis 20393, *13, 2011 WL 4634218, *4(Colloton, J., dissenting). Despite this observation, I consider the panel's rationale to be entirely persuasive when one considers, specifically, the law or act that provides for "wartime disability compensation," 38 U.S.C. §§ 1110-1118, or the law or act that provides for "peacetime disability compensation," id. §§ 1131-1137. This case does not require the Court to determine whether a non-service-connected VA disability pension, see id. §§ 1521-1525, would be subject to offset on the interpretation advanced by Sun Life, though I note that the only veterans eligible for such pensions are those who served during "a period of war." 38 U.S.C. § 1521.

NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, and request for oral argument before the district judge, if any is sought, within fourteen (14) days of being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

October 14, 2011